IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| KEYSHA WILLIAMS-TOLLIVER,           )<br>                                                           )<br>           Plaintiff,                         )<br>                                                           )<br>     vs.                                            )<br>                                                           )<br>CHARLESTON COUNTY SCHOOL )<br>DISTRICT,                                      )<br>                                                           )<br>           Defendant.                      )<br>_____ ) | CIVIL ACTION NO.: 2:17-cv-01549-RMG-MGB<br><br>**COMPLAINT**<br>(Jury Trial Requested) |

Comes now the Plaintiff, Keysha Williams-Tolliver, by and through undersigned counsel, alleges and says unto this Honorable Court the following:

**PARTIES**

1. Plaintiff, an African-American female, is a resident of and domicile in the County of Charleston, State of South Carolina.

2. The Defendant, the Charleston County School District (hereinafter referred to as the "District"), is a political subdivision of the State of South Carolina located in Charleston County, South Carolina.

3. The Plaintiff is informed and believes that at all times relevant herein, Louis J. Martin, Jr. (hereinafter referred to as "Martin"), resided in the County of Charleston, State of South Carolina and acted or was acting as an agent, servant, and/or employee of the Defendant.

4. The Plaintiff is informed and believes that Lynda Davis (hereinafter referred to as "Davis"), is a resident of the County of Charleston, State of South Carolina and at all times relevant herein, was acting in her capacity as an agent, servant, and employee of the Defendant.

1

5. In regards to Martin and Davis, Plaintiff further asserts that at all times relevant herein, Martin and Davis were acting in their capacity as Associate Superintendents of Secondary School and/or in their individual capacity in regards to the allegations hereinafter set forth.

6. Further, Plaintiff asserts that at all times relevant herein, that the Defendants, Martin and Davis, as Associate Superintendents and/or individually, invoked or carried out the discriminatory conduct against black female and male administrators, as well as black students in predominantly black schools, as will hereinafter be more specifically set out.

7. Nancy McGinley (hereinafter referred to as "McGinley"), at all times relevant herein, was the Superintendent for the Charleston County School District in regards to the allegations hereinafter set out.

8. Gerrita Postlewait (hereinafter referred to as "Postlewait"), at all time relevant herein, was and/or is the current Superintendent for the Charleston County School District and was acting within the cause and scope of her capacity in regards to the allegations hereinafter set out.

9. The Defendant, Charleston County School District, is vested with the authority to supervise administrators, teachers, principals, and assistant principals, including the hiring, firing, and termination of teachers, principals, assistant principals, and/or administrators.

10. At all times relevant herein, Postlewait, Davis, and Martin were acting within the course and scope of their employment in that they were servants and/or agents of the Defendant. Further, at all times relevant herein, the Defendant, the District, received federal funds for the purpose of supplementing and/or assisting in its pursuit to educate students in Charleston County. One of the primary purposes of receiving the federal funds was to provide employment

2

to administrators. For example, the School District received federal funds under the School Improvement Grant (SIG) to hire additional administrators at and for alleged at-risk schools.

## JURISDICTION AND VENUE

11. Jurisdiction of this Court is invoked pursuant to 28 USC 1331 and 1343, *et seq.*, 42 USCA 2000 *et seq*.

12. Compensatory and punitive damages are sought pursuant to the 1991 Civil Rights Act, *et seq.* as amended, as well as the 1964 Civil Rights Act; Title VI of the 1964 Civil Rights Act, Section 603; 42 USC 2000; Title VII of the 1964 Civil Rights Acts, Section 704(a), et seq. and Section 703(a) et seq. of the said act.

13. The Plaintiff filed and has presently pending before this Court, an action against the Defendant in this action. In the action pending before the Court, namely, *Keysha Williams-Tolliver v. Charleston County School District, et al., Civil Action No. 2:16-03674-RMG-MGB*, the Plaintiff alleges violation of her rights under 42 USCA 1983, 42 USCA 1981 and 42 USCA 1982, the Fourteenth Amendment of the United States Constitution in addition to being retaliated against for the exercise of her constitutional protective rights as well as the Equal Protection Clause of the United States Constitution.

14. The factual operatives of the Plaintiff's pending case and this action are intertwined to the extent that they are almost congruent. The Plaintiff was mandated by statute and case law to exhaust her administrative remedies under Title VII before she could initiate this action in this Court. In that connection, the Plaintiff received and is attached hereto as **Exhibits 1 and 2**, a Notice of Right to Sue letter from the South Carolina Human Affairs Commission and/or the Equal Employment Opportunity Commission. A number of the allegations in this

action are almost identical to the allegations in her pending action. In this action, Plaintiff is also asserting that the Defendant, by way of intentional discrimination, violated Title VI of the 1964 Civil Rights Act, in that the Defendant received or is receiving federal funds for employment of personnel and otherwise.

15.     Furthermore, the Plaintiff seeks attorney's fees for the bringing of this action pursuant to the 1976 Civil Rights Attorney's Fees Act as well as injunctive relief where appropriate.

## FACTS

16.     The Plaintiff was employed by the Charleston County School District as an Assistant Principal beginning in the 2008-2009 school year.

17.     The Plaintiff's initial placement was at West Ashley High School. Plaintiff stayed at West Ashley High School for a period of four (4) years.

18.     The Plaintiff noticed and began complaining, early on in her employment, about the disparate treatment that minorities and certain intentional racially discriminatory practices, especially African-Americans, were receiving at the hands of administrators in terms of discipline as well as special education service and placement.

19.     The Plaintiff complained in meetings that the School Resource Officer (SRO's) stated that African-American boys from certain areas of Charleston County should be referred to as *"thugs"*. Plaintiff complained that these characterizations of black student were intentional in that no such references or racially derogatory locutions were made to, about, and/or at white students.

20. The Plaintiff complained to her supervisor as well as the administration at the Defendant's District Office about the SRO's referring to black students as *"drug dealers"* and *"criminals"*.

21. During her entire tenure at West Ashley High School, Plaintiff never received a bad or substantial evaluation.

22. Subsequent to leaving West Ashley High School, Plaintiff was hired at Burke High School for the school year 2011-2012.

23. While at Burke High School, Plaintiff complained about the intentional racially discriminatory treatment that black administrators were receiving as oppose to white administrators and/or assistant principals. For example, Burke High School, along with two (2) other schools, was a recipient of a School Improvement Grant (SIG). The other two (2) schools that received the grant, had a majority Caucasian administrator.

24. The African-American administrators at Burke High School, including the Plaintiff, were made to meet, repeatedly, with Sandy Brossard, a Caucasian consultant with the District, in regards to the administration of the said School Improvement Grant.

25. The white administrators at the two (2) other schools that received the School Improvement Grant, met rarely with the Caucasian consultant in connection with the School Improvement Grant.

26. The Plaintiff further complained to her supervisor about the intentional racially discriminatory practice by the District officials of establishing educational programs and/or initiatives at Burke High School and in the middle of the school year, dismantling or dispensing with the program(s) and transferring it to a majority white high school, although in large measures, the said program(s) were funded with Federal Funds.

27. The Plaintiff complained about and opposed the intentional racially discriminatory treatment that was being levied against Burke High School, a majority all black high school as oppose to West Ashley High School and/or a majority all white high school.

28. The Plaintiff further complained to her supervisors, including but not limited to, Martin, about Burke High School being a dumping ground for ineffective teachers by other schools in the District.

29. The Plaintiff further complained to the District, as well as her supervisor, about recruiting and verbally getting commitments from the highly qualified teachers. The District would allow these teachers not to go to Burke or break the commitment to Burke and place them in other schools. Further, Plaintiff was informed by other Caucasians administrators and/or staff personnel, that Martin targeted the Plaintiff for eventual termination, solely because of her race. For example, a Caucasian employee informed the Plaintiff that they had to come up with a plan to get Martin to like the Plaintiff. While at Burke, the Plaintiff never received a bad evaluation from the school's executive principal.

30. In the 2012-2013 school year, Plaintiff was ordered by Martin to transfer her administrative skills to Garrett High School.

31. The reason Martin gave, was that he did not believe that the Plaintiff was doing good at Burke High School, notwithstanding the fact that the Plaintiff received, both years while at Burke High School, excellent evaluations.

32. Garrett High School was majority black, in terms of student population. However, the teaching staff were predominantly white. Plaintiff complained to the principal at Garrett High School about the intentional racially discriminatory acts of Caucasian teachers initiating actions that resulted in cutting of the hood on black students' attire and cutting the

pockets of black students' pants.  Plaintiff asserts that these actions were never done at white high schools.  Although white students at predominantly white high schools wore attires that had hoods as a part thereof, those students were never made to cut the hood off their attire or the pockets off their pants.

33.     Further, Plaintiff complained that most white high schools did not have a student dress code or a strict dress code, while Garrett High School and other predominantly black high schools had to wear a uniform.  For example, a student at predominantly black Stall High School, who came to school without being dressed in their uniform, would be put in in-school suspension (ISS) for the entire day.

34.     While at Garrett High School, Martin directed the principal to place the Plaintiff, solely because of her race, on a Performance Improvement Plan.  When that principal refused, Martin placed the principal, who is also an African-American female, on a Performance Improvement Plan.

35.     Further, Plaintiff complained, after being transferred to Stall High School by Martin for the 2014-2015 school year, about the intentional racially discriminatory conduct practice by the Defendant, in that black students who were special ed students, being suspended, disproportionately, as oppose to white students and beyond the ten (10) day suspension.

36.     The Plaintiff repeatedly, during her entire tenure at Stall High School, complained about the intentional racially discriminatory treatment in regards to discipline that African-American students were receiving at the hands of the administration and the Charleston County School District.  Black students were six times more likely to be suspended than white students for the same offense.

37. The Twilight Program, established for the 2010-2011 school year, became a dumping ground for black students by all schools in the Charleston County School District, in that they (black students) constituted an average of seventy-four percent (74%) of the students who were in the Twilight Program.

38. In the 2015-2016 school year, Lynda Davis, insisted that the Plaintiff be put on a Performance Improvement Plan, allegedly, for a teacher whom the Plaintiff evaluated not liking her scores.

39. The Plaintiff's white counterpart, admitted, in an email, that he did not do an evaluation on all of the teachers whom he was assigned to evaluate, yet he is still an Assistant Principal and was not recommended for a Performance Improvement Plan.

40. Furthermore, the Plaintiff's white counterpart did not complete an evaluation of or on one teacher.

41. In April of 2016, the Plaintiff was demoted by Lynda Davis, to a teacher, by way of offering the Plaintiff a teacher's contract, because of allegedly not completing teachers' evaluations timely. The white counterpart who did not complete his evaluations and/or did not evaluate one teacher in his charge during the entire year, was not demoted or put on a Performance Improvement Plan or given a teacher's contract.

42. The Plaintiff alleges that because she criticized and opposed the intentional racially discriminatory policies of the Defendant as it relates to black students, black administrators in general, and specifically black female administrators, as well as other discriminatory practices exhibited and engaged in by the District, she was demoted from Assistant Principal to a teacher for the school year 2016-2017. Further, Plaintiff was told by Davis, that she (Davis) would rule on the Plaintiff's Performance Improvement Plan after April

25, 2016. The very language of the contract itself, mandates that the contract have to be executed on or before April 25, 2016. Davis never presented the Plaintiff with a contract, nor completed, by way of attaching her signature thereto, the Plaintiff's Performance Improvement Plan, thereby constructively terminating the Plaintiff from her position as Assistant Principal.

43. Plaintiff asserts that black female Assistant Principals are routinely denied promotions as compared to their white counterparts by the District. The District has exhibited a preference for promoting black male to principals as oppose to black females. Plaintiff asserts that because of her race and sex, she was discriminated against by the District.

44. The Plaintiff further asserts that she complained to the District, in general, and Martin, in particular, about demotions and/or intentional racially discriminatory treatment as it relates to black female Assistant Principals and Principals.

45. The Plaintiff asserts that Martin, as Associate Superintendent, on numerous occasions, tried and did have black female Assistant Principals demoted; placed on a Professional Improvement Plan (PIP) when that was not necessary; and removed black female Assistant Principals from schools and replaced them with white Assistant Principals with less or no experience.

46. On or about February 6, 2015, Plaintiff filed a complaint with Equal Employment Opportunity Commission (EEOC) based on race, retaliation, and sex against the Defendant after attempting to file a complaint with the Office of Civil Rights for the United States Department of Education. Further on September 22, 2016 and November 1, 2016, Plaintiff filed additional complaints with the Equal Employment Opportunity Commission alleging discrimination based on race, retaliation. Plaintiff also alleged in the November 1, 2016 complaint, that she was constructively terminated by the Defendant.

47.     Plaintiff continuously spoke out against the intentional racially discriminatory treatment against black Administrators, Assistant Principals, and Principals.  Black Principals, Assistant Principals, and Administrators are routinely demoted to teachers or counselors' positions while similarly situated white counterparts are not.  For example, for the 2016-2017 school year, out of five (5) principals demoted to teachers or otherwise, four (4) were black.

## FOR A FIRST CAUSE OF ACTION
### (Race Discrimination)

48.     The Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

49.     The Plaintiff alleges that the Defendant's conduct towards the Plaintiff, from the first time that the Plaintiff complained of race discrimination, was done solely because of the Plaintiff's race, in violation of Title VII of the 1964 Civil Rights Act, the 1991 Civil Rights Act and 42 USCA 1981, as amended.

50.     As a result of being discriminated against because of her race, Plaintiff suffered damages, both punitive and actual, in an amount to be proven at trial.

## FOR A SECOND CAUSE OF ACTION
### (Retaliation)

51.     The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

52.     Plaintiff alleges that she was retaliated against for complaining about and/or opposing the intentional racially discriminatory practices engaged in by the Defendant in regards to black students, administrators and Assistant Principals.

53.     As a result of retaliation, Plaintiff suffered damages, both punitive and actual, in an amount to be proven at trial.

## FOR A THIRD CAUSE OF ACTION
### (Sex)

54.     The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

55.     Plaintiff asserts that she was discriminated against because of her sex, in that the Defendant did not discipline or demote her male counterparts who were similarly situated or comparable, in terms of demotion or promotion.

56.     As a result of being discriminated against because of her sex, Plaintiff suffered damages, both punitive and actual, in an amount to be proven at trial.

## FOR A FOURTH CAUSE OF ACTION
### (Violation of Title VI of the 1964 Civil Rights Act)

57.     The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

58.     Plaintiff asserts that the Defendant, by and through their conduct, policy, procedures, and customs, intentionally, discriminated against black students, predominantly black schools, and black administrators, all in violation of Section 602, *et seq.* of Title VI.

59.     Plaintiff asserts that she is entitled to actual, consequential and compensatory damages, as well as reasonable attorney's fees and costs under the 1978 Civil Rights Attorney Fees Act and 42 USCA 1988.

### FOR A FIFTH CAUSE OF ACTION
### (Retaliation)
### (Violation of Title VI of the 1964 Civil Rights Act)

60. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

61. Plaintiff further asserts that in complaining about and/or objecting to the continuous discrimination against black employees, principals, assistant principals, and/or students by the District and/or its agents and servants, the District, through said agents and/or servants, retaliated against the Plaintiff causing the same actual and punitive damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiff prays judgment against the Defendant as follows:

a. Compensatory damages;

b. Injunctive relief;

c. Consequential damages;

d. Punitive damages;

e. Attorney's fees and costs under the 1988 Civil Rights Act; 42 USCA 1981; and 42 USCA 1983;

f. And for such other relief as this Court may deem just, equitable and proper.

BY:  s/Edward M. Brown, Esquire
EDWARD M. BROWN, ESQUIRE
Attorney for the Plaintiff
Federal I. D. No. 1510
P. O. Box 20261
Charleston, SC  29413
(843) 559-9224
(843) 559-9226 (Fax)

Charleston, South Carolina
Dated:  June 14, 2017